UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

CASE NO: 01-6069-Cr-Roettger

UNITED STATES OF AMERICA,

     Plaintiff,

v.

RANDY WEAVER,

     Defendant.

_____/

**DEFENDANT WEAVER'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO**

**SUPPRESS**

COMES NOW, Randy Weaver, filing Ex Parte', in the above-entitled matter does hereby submit to the Court the following Memorandum of Law in Support of Defendant's motion.

The Defendant states that the Government bears the burden of justifying a warrantless search. See Mincey v. Arizona, 437 U.S. 385, 390-91, 98 S.Ct. 2408, 2412-13, 57 L.Ed.2d 290 (1978); United States v. Jeffers, 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59 (1951). In United Staes v. Johnson, 936 F.2d 1082 (9th Cir. 1991) at [n.1] Johnson argued that the inventory search itself was unlawful because (a) the Ellensburg police did not conduct the search pursuant to an established inventory-search procedure, as required by South Dakota v. Opperman, 428 U.S. 364, 372, 96 S.Ct. 3092, 3098, 49 L.Ed.2d 1000 (1976), (b) the Ellensburg Police did not ask him to consent to the search, as apparently required by this court's reading of Washington state law in United States v. Wanless, 882 F.2d 1459, 1464 (9th Cir. 1989), and (c) even a routine inventory search cannot constitutionally expand to an automobile's locked trunk.

In the instant case, the Defendant had a lock on his room door, and had taken



every step shy of installing closed-circuit camera's to protect his privacy. The items that were seized, were not seized at the time of the Defendant's arrest, with the exception of the Defendant's Driver's License, and his cellular phone, all said other items in question were seized some 4-6 hours after the Defendant was in custody, and after the Defendant had notified the Honorable Magistrate Judge Lurana S. Snow that he wanted an Identity Hearing. None of the items in question were in "plain view" except for the wall calander, which hung on the wall next to the Defendant's desk.

See the attached schedule of items illegally seized for location of each item, and a description of each item.

The Defendant was arrested on June 22,2000, on an "alleged warrant for arrest", out of the District of South Carolina, for violation of Supervised Release, and that the alleged victim in this case, Deputy Marshal Michael Gloetzner, had returned to the Defendant's residence and told Ms. Newson that he wanted to search for "weapons", Gloetzner knew there would be no weapons found at the residence, and even if the Deputy Marshal had found such a weapon, it would subject to dismissal anyway in violation of the Defendant's Fourth Amendment, as the Defendant raises now in this issue. The Defendant relies on the United States Constitution, IV & XIV. Amendment IV, provides in part,..."the right of the people to be secure in their person, house, papers and effects, against UNREASONABLE SEARCHES and SEIZURES, shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath and affirmation, and particularly describing the place to be searched and the person or things to be seized." U.S.C.A. § XIV, Makes that right binding upon the states in pertinent part,"...nor shall any State deprive any person of life, liberty or PROPERTY, without due process of law..."(See Florida State Constitution, Art. 1, Sec §16)

The warrant requirement also applies to entry into a room in which the Defendant was paying rent, and the room was not considered part of any "common-area" of said residence. In, United States v. Roper, 681 F.2d 1354, 1357 (11th

Cir. 1982) cert. den'd. 459 U.S. 1207, 103 S.Ct. 1197, 75 L.Ed.2d 440 (1983), this circuit held consistent with the teaching from the United States Supreme Court, "that a person does not forfeit Fourth Amendment protections merely because he is residing in a hotel room."

The Defendant claims that because he was staying in a room, in which he was paying rent of $125.00 weekly, that he does not waive any Fourth Amendment protections either. Clearly, the fact that the Government Agents never procured a search warrant, and that the area in which said items were seized, clearly was not any part of any so-called "common-area", then the Defendant had an expectation of privacy behind his closed and locked bedroom door, and the contents of desk and other areas within said room, were protected by the Constitutional safeguards.

Additionally, the mere fact that the seizure occurred before the date of the alleged incident in this case, clearly supports that the property was seized in what the Government Agents claim, the issue of Violation of Supervised Release. If this be so, then the Government clearly lacks any standing on which to argue that said items should not be suppress.

Further, support weighs heavily in the Defendant's favor, when he had not only filed pro se' motions with the Court after the illegal search and seizure, but also that the Defendant's prior counsel, Benjamin T. Stepp (A.F.P.D. South Carolina) even contacted the same individuals back on August 14,2000, requesting that said agents surrender illegally seized property. [Exhibit "A"]

Evidence that Deputy Michael Gloetzner acted alone in the second search is evident by the statement made by Deputy James Meehan to counsel, in which he stated,"I dealt only with the checks given to Lissette, and I don't know whether I could/should talk to you cause Randy has a lawsuit against me".

Clearly, Deputy Gloetzner went on a "fishing expedition" when he returned to the Defendant's residence, without a warrant, which he had plenty of time to try to obtain, using the disguise that he was there to search for "weapons", but leaves with no "weapons" but the items listed herein. This would clearly leave one to belie

to believe that Deputy Gloetzner had other things in mind when he went to the Defendant's residence the second time. The fact that Deputy Gloetzner knew his actions were illegal go to the issue, that the Government Agent never even left any inventory record behind with Ms. Newson or left a record period, that would allow the Defendant to know exactly what was seized from his residence.

On the day of the defendant arrest, Defendant was found inside his room completely disrobed walking towards his shower. Neither Deputy Meehan nor Deputy Gloetzner ever knocked and announced their purpose and authority, is evident by the statement of Ms. Newson. In that statement, Ms. Newson stated, " the marshals' came in with their guns drawn like Randy was some "Armed" bank robber", further, Ms. Newson had stated to the Marshals' that all they had to do was ask her if she had a key.

The Fourth Amendment prohibits only unreasonable searches and seziures. See Skinner v. Railway Labor Execytives'Ass'n, 489 U.S. 602, 619, 109 S.Ct. 1402, 1414, 103 L.Ed.2d 639 (1989). In determining the reasonableness of a search, courts balance the intrusion on an individual's Fourth Amendment interests against the promotion of legitimate Government interests. See, United States v. Villamonte-Marquez, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579-80, 77 L.Ed.2d 22 (1983). The Supreme Court has repeatedly emphasized the "cardinal principal" that "'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment-subject to a few specifically established and well delineated exceptions.'" Citing, Mincey, Supra, and quoting, Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967))

In 1990, following the principals enunciated in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), the Supreme Court carved out one such exception in Buie, permitting law enforcement officers to conduct "protective sweep" incident

-4-

to an in-home arrest. See Buie, 494 U.S. at 331-34, 110 S.Ct. at 1096-98.

In Buie, following an armed robbery committed by a man in a red running suit and an accomplice, the police obtained an arrest warrant for Buie at his home and arrested him as he emerged from the basement. Id. at 328, 110 S.Ct. at 1095. In assessing the propriety of this search, the Court held:

> as an incident to the arrest the officers could, as a
> precautionary matter and without probable
> cause or reasonable suspicion, look in
> closets and other spaces immediately
> adjoining the place of the arrest from
> which an attack could be launched. Beyond
> that, however, we hold that there must be
> articulable facts which, taken together
> with the rational inferences from those
> facts, would warrant a reasonably prudent
> officer in believing that the area to be
> swept harbors an individual posing a danger
> to those on the arrest scene.

Id. at 334, 110 S.Ct. at 1098.

The Court thus identified two situations in which protective sweeps are justified, and two types of protective sweeps. The first involves "look[ing] in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Id. The second goes " beyond that," but is nevertheless circumscribed-"such a protective sweep, aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found." Id. at 334-35, 110 S.Ct. at 1098-99.

The first type of sweep requires no probable cause or reasonable suspicion,

while the second requires "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonable prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." Id. at 334, 110 S.Ct. at 1098.

Defendant Weaver argues that this case involves Buie's first type of sweep. The Government Agents who arrested Weaver lacked reasonable belief based on specific and articulable facts that the area searched harbored a dangerous individual, which would justify Buie's second type of sweep. The Government will argue that the Marshals' had the requisite articulable facts for Buie's second type of sweep: because the background check revealed that Weaver had prior arrests and that the present arrest warrant, a violation of supervised release, which was not a crime of violence. However, when Gloetzner began his sweep, Defendant Weaver had already been arrested and placed in handcuffs. See, United States v. Kimmons, 965 F.2d 1001 at [n.6,7] (11th Cir. 1992).

The Government will also assert that Ms. Newson gave consent to search the Defendant's room during the second search, when Defendant had already been removed from the scene, under the pretense that Marshal Gloetzner was searching for "weapons". It has well been established that a landlord may not infringe upon the rights of those in whom they rent property to. In Chapman v. United States, 365 U.S. 610, 5 L.Ed.2d 828 (1961), the United States Supreme Court held that, (landlord cannot validity consent to search of house he/she has rented tp another); United States v. Hughes, 441 F.2d 12 at [n.5-8] (5th Cir. 1971), held that: [W]here the search does not extend to a part of the premises rightfully on exclusive control of one against whom the search is directed, the courts have upheld the validity of the search.

In the instant case, the Defendant had exclusive rights to privacy in the bedroom in which he was paying rent, and that the consent of Ms. Newson did not authorize the Government Agents to search through closed compartments within the

-6-

Defendant's bedroom. Further, Ms. Newson stated in her statement provided to counsel in Defendant's violation of supervised release case, that the Marshals' "had come in with their guns drawn like Randy was some "armed bank robber", this does not amount to consent under even the most liberal circumstances. This circuit has continued to hold that a landlord may not consent to search property in which they have rented to another. See, Garza-Fuentes v. United States, 400 F.2d 219, 222 (5th Cir. 1968); Holzhey v. United States, 223 F.2d 823 (5th Cir 1955); Moffett v. Wainwright, 512 F.2d 496, 499-501 (5th Cir. 1975).

The Defendant further argues that the property seized was seized in relation to the original arrest in which the Defendant had been arrested for, and had absolutely no bearing at all on the charge now before the Court. In the instant case the Defendant asserts that the Government Agents knew that the search was illegal and failed to return said property to the Defendant.

In addition, Gloetzner continued to violate Defendant's Constitutional Rights when, on June 28,2000, he seized a personal letter from the possession of the Defendant, alone with Three legal motions that the Defendant had typed up for counsel at his appearance, and has to this day failed to return any of the aforementioned property in which the Defendant is sole owner of the same.

WHEREFORE, the Defendant prays that this Honorable Court hold an evidentiary hearing and that the Court order that the aforementioned property, as stated in the attached schedule of illegally seized property, be returned to him, and that the same, along with any conversations relating to the same, be suppressed in any criminal matter.

Respectfully Submitted,

Randy Weaver
Defendant/ Ex Parte'

-7-

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY, that a true and correct copy of the foregoing was mailed to Donald Chase, Esq., Assistant United States Attorney, 500 East Broward Boulevard, 7th floor, Fort Lauderdale, Florida 33394, as well as Mr. Scott Sakin, CJA., 1411 N.W. River Drive, Miami, Florida 33125, on this _24_ day of August, 2001.

Respectfully Submitted,

By: _____

Randy Weaver

Defendant/ Ex Parte'